CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

09/20/2018

JULIA C. DUDLEY, CLERK
BY:     s/ F. COLEMAN
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **FRANCES H.[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:17CV44** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Frances H. ("Frances") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act").[2]  42 U.S.C. §§ 401–433, 1381–1383f.  Frances alleges that the Administrative Law Judge ("ALJ") erred by finding that she was not disabled and failing to award benefits.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Frances's Motion for Summary Judgment (Dkt. No. 16) and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 17).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

support the Commissioner's conclusion that Frances failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Frances filed for SSI and DIB in May 2013, claiming that her disability began on March 5, 2012, due to a broken left ankle, high blood pressure, cholesterol, diabetes, arthritis, and sleep apnea. R. 12, 199–206. Frances's date last insured was December 31, 2017; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 12, 242; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Frances's applications at the initial and reconsideration levels of administrative review. R. 63–74, 75–86, 89–101, 102–114. On February 12, 2016, ALJ Theodore W. Annos held a hearing to consider Frances's claims for SSI and DIB. R. 28–62. Frances proceeded pro se at the hearing, which included testimony from vocational expert Tony Melanson. On May 4, 2016, the ALJ entered her decision analyzing

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Frances's claims under the familiar five-step process[4] and denying her claim for benefits.[5] R. 12–22.

The ALJ found that Frances was insured at the time of the alleged disability onset and that she suffered from the severe impairments of lumbar and cervical spine disorders, peripheral neuropathy, bilateral shoulder tendonitis, bilateral hip bursitis, status post left ankle fracture, osteoarthritis of the hands, wrists, and ankles, bilateral carpal tunnel syndrome, and obesity.[6] R. 14. The AL determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 15–16. The ALJ specifically considered listing 1.04 (disorders of the spine), 11.14 (peripheral neuropathy), 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.08 (soft tissue injury). R. 15–16.

The ALJ concluded that Frances retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 16. Specifically, the ALJ found that Frances can only occasionally push and pull with the upper extremities, use hand controls, climb ramps and stairs, balance, stoop, kneel, and crouch, and be exposed to extreme cold, extreme heat, wetness, humidity, vibration, and hazards such as unprotected heights, moving mechanical parts, and

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Frances was 55 years old on her date last insured, making her a person of advanced age under the Act. R. 102.

[6] The ALJ determined that Frances's hypertension, hyperlipidemia, palpitations, allergic rhinitis, and facial nerve disorder were non-severe impairments. R. 15. Further, he determined that Frances's diabetes mellitus and obstructive sleep apnea are not medically determinable impairments. Id.

motor vehicles. She can never crawl or climb ladders, ropes, or scaffolds, and can never reach overhead. She can frequently reach in all other directions, and frequently handle, finger, and feel. Id. The ALJ determined Frances was able to perform her past relevant work as a Fiscal Technician and Client Service Associate. R. 20. As an alternative finding, the ALJ also determined that she could perform jobs that exist in significant numbers in the national economy, such as receptionist, office helper, and cafeteria attendant. R. 21. Thus, the ALJ concluded that Frances was not disabled. R. 21. Frances appealed the ALJ's decision and the Appeals Council denied her request for review on April 21, 2017. R. 1–3.

## ANALYSIS

Frances argues the ALJ wrongly determined that she was not disabled, and urges that she be awarded benefits. The Commissioner asserts that the ALJ appropriately considered Frances's treatment history, consultative examination, function report, and the medical opinions, and the decision is supported by substantial evidence.

### A. Medical History

1. Physical Impairments

On her alleged onset date of March 5, 2012, Frances slipped on ice and was treated at the hospital for a displaced left ankle fracture. R. 284–86. Frances underwent surgery placing a screw to stabilize the ankle, and then physical therapy. R. 291, 325, 329–38. On May 15, 2012, she was released to return to work for "light duty," and on August 7, 2012, she was cleared to return to work full duty. R. 338, 346. However, her treating physician Michael J. Diminick, M.D., noted on that date that Frances was walking with a cane, and "progressing slowly" in physical therapy, but without "a lot of pain." R. 346. Frances was discharged from physical therapy in September 2012 because her insurance coverage expired, and provided with a home

program. R. 352. By September 2013, she was walking normally, but had limited range of motion and tenderness in her left ankle. R. 541–42. An x-ray of her left foot and ankle in January 2014 showed mild degenerative changes at the first metatarsophalangeal joint, but that the fracture had healed. R. 544–45.

Frances had follow-up visits with Dr. Diminick in May and July 2014, with continued complaints of shoulder, hip, hand, and face pain. R. 601, 595. She walked normally and displayed normal strength on examination, but had limited range of motion and tenderness in her shoulders, with "markedly positive" Tinel's and Phalen's signs. Frances was diagnosed with a facial nerve disorder and carpal tunnel syndrome. R. 602, 595. At an orthopedic consultation with Jessica Frankenhoff, M.D. in September 2014, Frances complained of bilateral hand and arm pain, and was assessed with parasthesias. R. 568. At a follow up visit in February 2015, Dr. Frankenhoff indicated there was "no evidence of carpal tunnel syndrome" or cervical radiculopathy. R. 643. In April 2015, Frances saw Lawrence F. Cohen, M.D. on referral from Dr. Frankenhoff, and on examination Dr. Cohen noted normal gait, full strength in all motor units, no sensory deficits, and symmetrical reflexes, but pain and restricted range of motion in the neck. R. 630. Dr. Cohen indicated that Frances had spinal cord and nerve root compression and discussed surgical intervention. Id. At a follow-up appointment with Dr. Cohen in January 2016, Frances had continued neck and arm pain, but was unchanged on examination, and indicated she did not want surgery at that time. R. 684.

2. Medical Opinion Evidence

In May and October 2014, state agency doctors Josephine Cader, M.D., and Carolina Bacani-Longa, M.D., respectively, reviewed the record and found that Frances was capable of a limited range of light work. R. 81–83, 96–99.

In April 2014, Frances presented to Reza Imani-Shikhabadi, M.D. for a consultative examination. R. 551–57. Dr. Imani-Shikhabadi noted Frances's chief complaints were right shoulder pain and bilateral hand pain, both which were getting "progressively worse." R. 551. On examination, Frances had tenderness in the cervical and lumbar spine, with positive bilateral straight leg raises, as well as tenderness in the shoulders, wrists, hands, hips, and ankles. R. 554. However, Frances walked with a "normal steady gait" and had full range of motion in her cervical spine, upper and lower extremities, and symmetrical muscle tone. Frances's motor strength was normal, with the exception of slightly decreased grip strength. R. 555. Dr. Imani-Shikhabadi concluded that Frances could stand, walk, and/or sit six hours in a workday, and lift 10 pounds occasionally and less than 10 pounds frequently. R. 555–56. Further, Frances could reach, handle, feel, grasp, finger, bend, stoop, crouch, and squat frequently. R. 556.

**B. RFC**

Frances writes, "[d]ue to may health issues . . . I am unable to perform the physical work to maintain employment . . . ." Pl.'s Br. at 2, Dkt. No. 16. Because Frances is proceeding pro se, I will liberally construe her brief as a general challenge to the ALJ's RFC finding. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).[7]

An RFC is the most a claimant can still do despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all the relevant evidence in the claimant's record and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the

---

[7] Frances also emphasizes that she has a strong work history and work ethics, and due to loss of health insurance coverage and financial concerns, can no longer see her doctor to follow up on her treatment plans. Pl.'s Br. at 2, Dkt. No. 16. I recognize that a claimant may not be penalized for failing to seek treatment he cannot afford. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). Here, however, the ALJ did not improperly penalize Frances for any failure to seek treatment, and, Frances mentioned during her testimony at the hearing that she began to go to VCU when she lost her insurance, "because they would see [her]." R. 35. Frances does not specify what treatment, if any, she forewent due to financial concerns.

claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015).

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence

supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996).

Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence

supporting his conclusion, discuss the individual's ability to perform sustained work activities in

an ordinary work setting on a regular and continuing basis, describe the maximum amount of

each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996

WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing

that an ALJ needs to provide an explicit explanation linking medical evidence listed in the

decision to his ultimate findings). However, in Mascio, the court rejected a "per se rule requiring

remand when the ALJ does not perform an explicit function-by-function analysis," agreeing

instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to

assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the

record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " 780

F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court

held remand was necessary, in part, because the ALJ failed to indicate the weight given to two

residual functional capacity assessments which contained relevant conflicting evidence regarding

the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL

1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Frances does not allege any specific errors in the ALJ's RFC, instead contending that she

is, in reality, unable to work. However, I find that the ALJ's RFC finding is supported by

substantial evidence. The ALJ discussed Frances's testimony, her treatment records, and the

medical opinion evidence, supporting his RFC finding with evidence from the record. The ALJ acknowledged Frances's consistent complaints of pain in her neck, shoulders, arms, and hands, numbness, and decreased range of motion in her shoulder. R. 18. However, the ALJ emphasized that at medical visits Frances "routinely presents with normal physical examinations, which note normal strength, gait, and range of motion."[8] R. 19. Regarding her treatment, though Frances took prescription pain medication at times, she reported in November 2015 that she was taking only Tylenol and Advil for her pain, which the ALJ found "inconsistent with her allegations of severe physical pain." R. 19, 272. Further, Frances elected not to pursue surgery to address her pain. R. 684.

The ALJ gave great weight to the opinions of the state agency doctors, who found Frances could perform a limited range of light work. R. 19. The ALJ also gave great weight to the consultative examiner's opinion, with the exception of his finding that she is limited to occasionally lifting and carrying 10 pounds and frequently lifting and carrying less than 10 pounds.[9] The ALJ explained that "this limitation is inconsistent with [the consultative examiners] own objective findings," the objective evidence in the record, and Frances's "wide variety of activities of daily living." Id. As the ALJ noted, Frances's treating physician, Dr. Diminick authorized her "return to fully duty work [] 20 weeks [after her ankle fracture]" and no treating physician or other doctor in the record has found that Frances is unable to work. R. 18, 346.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ

---

[8] The ALJ also did not find Frances fully credible regarding the severity of her symptoms, noting that she "has demonstrated the ability to perform a wide variety of daily activities" including caring for pets, personal care, chores, walking, and driving. R. 18. The ALJ pointed out that Frances's testimony that she has not been able to do these activities after her alleged onset date was inconsistent with her statements in her Function Report. Id.

[9] The vocational expert testified that even if Frances was limited to carrying 10 pounds occasionally and less than 10 pounds frequently, she would still be able to perform her past relevant work as a Fiscal Technician, as well as the job requirements of a secretary. R. 58.

in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a sufficient summary and explanation of Frances's medical records, her hearing testimony, and the ALJ's conclusions. R. 17–19. I find that the ALJ's RFC findings are supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Frances's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

Entered:  September 20, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge